# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **ROBERTO BARRIENTOS** | ) |
| Plaintiff, | ) |
| v. | ) No. 10 C 1236 |
| **P.O. HARITOS, et al.** | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

On the evening of April 10, 2009, plaintiff--a passenger in a car pulled over for a traffic violation--was arrested and charged with possession of a controlled substance after defendant officers found on his person several small bits of paper they suspected of being coated with lysergic acid diethylamide ("LSD"). While plaintiff was in custody on the charge, however, laboratory tests revealed that the papers did not contain any illegal substances. The charge against plaintiff was dismissed, and plaintiff was released from custody, six days later. On February 24, 2010, plaintiff filed suit against the arresting officers alleging unreasonable seizure pursuant to 42 U.S.C. § 1983, and against the officers and the City of Chicago under the state law doctrine of malicious prosecution. Now before me is defendants' motion for summary judgment, which I grant for the reasons explained below.

### I.

Except where noted, the following facts are undisputed. At

around 7:25 in the evening of April 10, 2009, on-duty Chicago Police Officers Haritos and Rooney observed a dark vehicle with illegally tinted windows driving south on Pulaski Avenue.[1] The officers followed the vehicle for several blocks while they "ran" the plates on their computer, then initiated a traffic stop. Once the car had come to a stop, both officers approached, initially with their guns drawn because the tinted windows prevented them from seeing inside the vehicle to ascertain whether the car's occupant or occupants might present a safety risk. Defendant Haritos approached the passenger's side of the vehicle, where plaintiff was seated, while Officer Rooney approached the driver's side.

As the officers neared the vehicle, the front passenger window

---

[1] Although plaintiff purports to dispute that the officers observed the illegally tinted windows prior to initiating the traffic stop, the evidence on which he relies--the testimony of the car's driver, who stated that the officers could see only the vehicle's rear window (which was tinted, but not unlawfully) because they were behind the vehicle--lacks foundation. *See* Rodriguez Dep., at 85:10-12, Pl.'s L.R. 56.1 Stmt., Exh. A. Haritos testified at his deposition as follows: "Q: And when you were traveling down Pulaski, was that just in the normal patrol duties? A: No. Q. Was there a reason why you were traveling down Pulaski? A: Yes. Q: What was that reason? A: I observed a vehicle with tinted windows going southbound as I was exiting the police station parking lot. Q: You personally observed that? A: Yes. Q: Where's the 17th District station located? A: 4650 N. Pulaski." Haritos Dep., at 25:3-16, Def.'s L.R. 56.1 Stmt., Exh. C. Haritos went on to explain that by "tinted windows" he meant "all of the windows except for the front windshield in front of the driver," id., at 25:21-22, that he saw the car right as he was pulling out of the station, *id.*, at, 26:2-4, and that he then "made [his] way through traffic to get behind" the vehicle. *Id.* at 27:9-10. In view of Haritos's testimony about where and when he first observed the tinted windows, Rodriguez's testimony that Haritos could not see the vehicle's side windows "when the police initially stopped [him]" because Haritos was behind him at the time fails to raise a genuine factual dispute.

2

rolled down, enabling Haritos to see plaintiff inside. Here the parties' stories diverge. According to defendants, Haritos repeatedly ordered plaintiff to show his hands, but plaintiff did not immediately comply. After the third order, plaintiff removed his right hand from his pocket, but he kept his fist closed, and Haritos observed what appeared to be a plastic bag sticking out of plaintiff's closed fist. Haritos ordered plaintiff to exit the vehicle and then to open his fist. In plaintiff's hand was a clear plastic bag containing three square bits of paper. Haritos asked plaintiff what the paper squares were, and told plaintiff that he believed they contained LSD. Plaintiff made inconsistent statements about what the squares were and became nervous and fidgety, leading Haritos and Rooney (to whom Haritos had shown the papers, and who agreed that they looked like "hits" of LSD) to conclude that plaintiff was lying.

Plaintiff tells a different story of how Haritos came to discover the bits of paper. According to plaintiff, Haritos opened the passenger's door and pulled plaintiff out of the vehicle. Plaintiff admits that Haritos "probably was saying something" as he approached the car, but explains that he was "just trying to get the door open for him," Barrientos Dep., at 55:10-11, Pl.'s L.R. 56.1 Stmt., Exh. B, and denies that he failed to comply with any of Haritos's orders. Haritos then performed several searches of plaintiff's clothing, the last of which unearthed three small pieces of paper and several other innocuous items from plaintiff's pants pocket. Plaintiff asserts that

Haritos saw additional pieces of paper in plaintiff's hood and tried to get them, but that the papers flew away. Plaintiff claims to have told Haritos the paper was confetti, but "[h]e said that I'm lying to him, that he's not stupid, he's seen this before, he was once a college kid and all this other stuff." *Id*. at 74:2-5.

Defendants state that the officers' suspicion that the papers contained LSD was based on their training and experience. Indeed, it is undisputed that as part of their instruction in illegal drugs, Chicago Police recruits and in-service officers are taught that LSD is a colorless, odorless liquid, and that the most common delivery method entails putting a drop of the liquid on a small piece of paper--which could have an appearance similar to confetti--and ingesting the paper. It is further undisputed that prior to plaintiff's arrest, Rooney had seen a presentation as part of his officer training that included photographs of LSD in its most common distribution forms. Plaintiff points out--and defendants acknowledge--that prior to the episode at issue, Haritos and Rooney had collectively made, at most, one other arrest for possession of LSD. Indeed, Rooney had never seen LSD other than in photos. Nevertheless, plaintiff does not dispute that the papers in his possession were similar in appearance to papers commonly used to deliver LSD, that his demeanor when questioned about the papers was nervous and "fidgety,"[2]

---

[2]Plaintiff purports to dispute, on the ground that it is not supported by the record, defendants' statement, "Barrientos appeared visibly nervous, fidgety, shaky and overly talkative, which Rooney

or that the officers genuinely believed at the time they arrested him that the bits of paper in his possession contained LSD.[3]

Ultimately, a lab report dated April 24, 2009, revealed that the papers contained no illegal substances. The charge against plaintiff was dismissed, and plaintiff was released, though not until his next scheduled court appearance on April 30, 2009.

II.

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although I must view the evidence in the light most favorable to plaintiff, and draw all reasonable inferences in his favor, "the mere existence of *some* alleged factual dispute" is not sufficient to stave off an otherwise supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)(original emphasis). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

---

took as an attempt to distract the officers and hide something from them. Haritos saw that he was sweating and looking around a lot, which made him think he might attempt to flee." I am satisfied, however, that the record adequately supports defendants' characterization of plaintiff's demeanor.

[3]For example, plaintiff admits the statement, "[b]ecause they believed Barrientos was in possession of LSD, and he had been traveling in Rodriguez's car, the officers searched the car and impounded it for unlawful drugs in a motor vehicle and issued a ticket to Rodriguez for the tinted windows."

5

*Corp.*, 475 U.S. 574, 586 (1986).

Defendants argue that they are entitled to summary judgment of plaintiff's § 1983 claim because the undisputed facts establish that Haritos and Rooney had probable cause to arrest plaintiff. They further assert that even if probable cause were lacking, they are still entitled to summary judgment based on qualified immunity. Finally, defendants argue that plaintiff's malicious prosecution cannot proceed because 1) it fails as a matter of law where probable cause exists, and 2) there is no evidence to support a finding of malice.

The Fourth Amendment prohibits unreasonable searches and seizures, but a warrantless arrest does not run afoul of the Fourth Amendment if the arresting officer has probable cause. *Thompson v. Wagner*, 319 F.3d 931, 943 (7th Cir. 2003). "Probable cause for an arrest exists if an officer reasonably believes, in light of the facts and circumstances within his knowledge at the time of the arrest, that the suspect has committed, or is committing, an offense." *Id*. An officer is entitled to make reasonable inferences based on his or her experience and training when determining whether the circumstances in any particular case rise to the level of probable cause. *Id*. at 935-35.

"Qualified immunity shields public officials from liability when they act in a manner that they reasonably believe to be lawful." *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (citing *Anderson v.*

*Creighton*, 483 U.S. 635, 638-39 (1987)). "The doctrine allows "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Gonzalez*, 578 F.3d at 540 (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). Probable cause and qualified immunity are often analyzed together in § 1983 cases. *Thompson*, 319 F.3d at 935. What the analysis then boils down to is whether "a reasonable officer could have believed that, in light of the facts and circumstances within the officers' knowledge and clearly established law, [plaintiff] had committed or was committing an offense." *Id*.

III.

Although the parties' L.R. 56.1 statements generally muddy rather than clear the waters in terms of identifying genuine, material factual disputes,[4] my own review of the record leads me to conclude

---

[4]Curiously, plaintiff's counsel objects to defendants' practice of relying on affidavits to support their asserted facts, despite the fact that Fed. R. Civ. P. 56(c) and L.R. 56.1(a) both specifically contemplate reference to affidavits. At the same time, plaintiff's counsel fails, in at least one instance, to support plaintiff's own factual statement with any citation to the record at all, and in many cases, cites evidence that does not directly support (or rebut) the statement asserted. Meanwhile, defendants' statements are hardly exemplary. They frequently pack several factual assertions into one paragraph, complicating plaintiff's task of responding to them with succinct admissions or denials, and at times they mischaracterize the testimony in the record. Finally, both parties raise legal arguments (e.g., relevance, materiality) in their L.R. 56.1 submissions, although the appropriate place for such arguments is in their briefs. *See LaSalvia v. City of Evanston*, No. 10 C 3076, 2011 WL 1456758, at *1 (N.D. Ill. Apr. 15, 2011) (St. Eve, J.) ("the purpose of Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts—not to make factual or legal arguments.") (citing *Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006)).

7

that the only disputes that are arguably material to whether plaintiff's seizure was reasonable are: 1) whether Haritos discovered the bits of paper in a plastic bag that plaintiff appeared to be concealing inside his closed fist, or, instead in plaintiff's pants pocket, loose among other miscellany including a train schedule, a cell phone, and money; and 2) whether plaintiff gave inconsistent answers about what the papers were.

Plaintiff's first argument in opposition to summary judgment is that in his version of the events, Haritos did not have the reasonable suspicion necessary to order plaintiff out of the car and search him (which presumably means that Haritos would never have discovered the papers in the first place). This argument has several flaws: first, because plaintiff has not meaningfully challenged the legality of the traffic stop itself,[5] defendants were entitled to order plaintiff out of the car, regardless of any suspicion. *Maryland v. Wilson*, 519 U.S. 408, 410, 414-15 (1997) (police officer may, "as a matter of course" order a passenger in a lawfully stopped vehicle to exit the vehicle, "without reasonable suspicion that the passenger poses a safety risk."). Second, although plaintiff now argues that the search of his pants pockets was unlawful, his complaint alleges an unreasonable

---

[5]In his L.R. 56.1 statements, plaintiff raises the specter of an argument that the stop itself was unlawful by denying that the officers actually saw the illegally tinted windows prior to initiating the traffic stop, but he does not actually articulate this argument in his brief. In any event, even assuming plaintiff intended to raise this argument, his evidentiary support for it is flawed as discussed in note 1, *supra*.

*seizure*, not an unlawful *search*. Perhaps acknowledging that he must somehow fit his argument into the framework of his unreasonable seizure claim, plaintiff culminates what is really an unlawful search argument with the tepid (and, more importantly, unsupported) conclusion that the search of his pockets "unreasonably prolonged the seizure, violating the Plaintiff's rights." This argument is insufficient to withstand defendants' motion.

Plaintiff's next argument is that disputed facts preclude summary judgment on the issue of whether the officers had probable cause, after discovering the papers, to arrest plaintiff for possession of a controlled substance. There is no dispute that the appearance of the papers was substantially similar to what both officers had been trained to view as a possible conduit for LSD. It is likewise undisputed that the officers stated their suspicion to plaintiff, whose "fidgety" demeanor in response to their questions heightened their suspicions. If, in addition, the papers were contained in a plastic bag, which plaintiff appeared to be trying to conceal within his closed fist, and if plaintiff's answers to the officers' questioning was inconsistent, the case for probable cause would be strong indeed. But assuming that plaintiff was as surprised as the officers to discover the papers floating willy-nilly in his pocket, and that he clearly and consistently explained to the officers that they were nothing but harmless leftovers of the previous night's festivities, the officers' mistaken belief that probable cause existed

9

was nevertheless reasonable in view of the fact that the papers looked similar to what they had been trained to view as a possible conduit for LSD,[6] along with their perception of plaintiff's demeanor as consistent with that of a person trying to conceal drugs.  This is sufficient to entitle the officers to qualified immunity, even if probable cause was lacking.  *See Thompson v. Wagner*, 319 F.3d at 935 (a "reasonable but mistaken belief that probable cause exists is sufficient for entitlement to qualified immunity.... In cases involving the issue of whether probable cause existed to support an arrest, the case should not be permitted to go to trial if there is any reasonable basis to conclude that probable cause existed.") (Citations and internal quotations omitted)  Accordingly, the officers are entitled to summary judgment of plaintiff's § 1983 claim.

Defendants are also entitled to summary judgment of plaintiff's state law claim for malicious prosecution.  Even assuming that probable cause for plaintiff's arrest was lacking, the record is devoid of any affirmative evidence of malice, an element on which

---

[6]Indeed, plaintiff admits that a court also determined that probable cause existed to hold plaintiff on the charge of possessing a controlled substance, and also admits that the forensic scientist responsible for testing the papers at the Illinois State Police Forensic Science Center believed, based upon visual inspection prior to chemical testing, that they contained LSD.  Because these facts were not within the officers' knowledge at the time of the arrest, they do not bear directly on the question of probable cause, but they do support the conclusion that any mistake about whether probable cause existed was reasonable.  *See Gonzalez*, 578 F.3d at 540 (qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law.")

plaintiff bears the ultimate burden of proof.  *See Benuzzi v. Board of Educ. of City of Chicago*,---F.3d---, 2011 WL 2909904, at *9 (7th Cir. 2011) (summary judgment proper if nonmovant is unable to "establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial") (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  To the contrary, there is no dispute that the officers genuinely believed that the paper squares contained LSD.  *See Johnson v. Target Stores, Inc.*, 791 N.E. 2d 1206, 1223 (Ill. App. Ct. 2003) (even if probable cause is lacking, good faith belief that plaintiff had committed crime refutes inference of malice).

Plaintiff's attempt to piece together factual snippets into a collage of malice on the part of the officers is unavailing. Plaintiff cites no authority for his argument that malice may be inferred from the fact that the officers' arrest report and testimony about the circumstances of plaintiff's arrest are inconsistent with plaintiff's own account of the facts.  Indeed, the only case plaintiff cites in this connection, *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892 (7th Cir. 2001), not only fails to support this proposition, it confirms that "a malicious prosecution action against a police officer is anomalous because the State's Attorney, not the police, prosecute[s] a criminal action."   *Id*. at 901 (internal quotations and citation omitted).

Plaintiff also reads malice into the fact that plaintiff was not

11

released from custody, and charges against him were not dismissed, until six days after the lab report confirming that the papers in his possession did not contain LSD was signed. While the constitutionality of plaintiff's detention during this period is indeed questionable, plaintiff has not identified any facts to suggest that the officers even knew about the lab results, or were involved in any way in determining the date or conditions of plaintiff's release. Whatever claim plaintiff may have (or have had) based on his continued detention from April 24, 2009, to April 30, 2009, it is not a malicious prosecution claim against the officers here, or against the City of Chicago as the principal on whose behalf they were acting.

IV.

For the foregoing reasons, defendants' motion for summary judgment is granted in its entirety.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: July 25, 2011